UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- x

AKRAM FARGHALY and RANIA
MOHAMED,

                              Plaintiffs,                    **OPINION & ORDER**

              -against-                                      **16-cv-6660 (NG)(ST)**

THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT TRAFFIC
AGENT MARION MITCHELL, SHIELD
#2532[1], and NEW YORK CITY POLICE
DEPARTMENT POLICE OFFICER
ALVIN SOTO, SHIELD #25093,

                              Defendants.

--------------------------------------------------------- x

GERSHON, United States District Judge:

       Plaintiffs Akram Farghaly and Rania Mohamed bring claims under 42 U.S.C. § 1983 and

New York law against defendants the City of New York, New York City Police Department

("NYPD") Traffic Agent Marion Mitchell, and NYPD Police Officer Alvin Soto for civil rights

violations connected to Farghaly's arrest.  Specifically, Farghaly brings the following claims under

42 U.S.C. § 1983: false arrest against Officer Soto; false imprisonment against Officer Soto and

Traffic Agent Mitchell; failure to intervene against Traffic Agent Mitchell; excessive force against

Traffic Agent Mitchell; and First Amendment retaliation against Traffic Agent Mitchell.  He brings

the following claims under New York law against all defendants: false arrest and imprisonment,

assault and battery, and negligent and intentional infliction of emotional distress.  Mohamed,

Farghaly's wife, sues for loss of consortium under New York law.  Defendants now move for

---

[1] Defendants note that Traffic Agent Marlon Mitchell's name is misspelled in plaintiffs' pleading
as Marion Mitchell.

summary judgment on all of plaintiffs' claims.  For the reasons stated below, their motion is granted in part and denied in part.

## I. Factual Background

The following facts are not disputed unless otherwise noted.

On the afternoon of November 2, 2015, Farghaly, who worked as a yellow taxi driver, left his taxi parked at a taxi stand at 56th Street and Lexington Avenue for approximately 20–25 minutes while he went to pray.  When he returned, Farghaly saw Traffic Agent Mitchell placing a parking summons on his taxi.  The summons was for $115 for violating New York City Traffic Rule Section 4-08(c)(2), which prohibits standing at a taxi stand.  According to Farghaly, it was later dismissed.

### A.  Farghaly and Traffic Agent Mitchell Engage in an Altercation

Farghaly testified that, as Traffic Agent Mitchell moved on to issue a ticket to the next car, Farghaly protested the issuance of the summons by asking him, "What are you doing?" and informing him that he was legally parked.  Pl. Dep. at 76:24–25; 88:14–16.

The parties present differing versions of what happened next.  Traffic Agent Mitchell testified that, after he told Farghaly that he could not void the summons, Farghaly "became violent," as he approached Traffic Agent Mitchell and began cursing at him.  Mitchell Dep. at 41:23, 42:2–3, 44:1–3.  When Traffic Agent Mitchell tried to walk away, Farghaly spit at his face.  In an effort to deflect the spit, Traffic Agent Mitchell raised his hand, which was holding a parking ticket device ("PTD"), and his hand and the device made contact with Farghaly's face.  Farghaly then continued his "aggressive" actions by punching Traffic Agent Mitchell and grabbing his coat.  *Id*. at 54:14.  Traffic Agent Mitchell defensively raised his arm, which made contact with Farghaly again.  When Traffic Agent Mitchell attempted to leave the scene, Farghaly grabbed his arm to

2

prevent him from walking away, and Traffic Agent Mitchell pushed Farghaly to try to leave.  After a civilian bystander separated the two men, Traffic Agent Mitchell walked away.

Farghaly testified that, when he asked Traffic Agent Mitchell what he was doing, Traffic Agent Mitchell responded, "I am doing my job, are you blind?"  Pl. Dep. at 77:15.  After Farghaly continued his protests, Traffic Agent Mitchell said, "I am done already," and stated: "if you don't like it get the fuck out of my face and go back to your fuckin' country."  *Id.* at 78:6–16.  Farghaly told Traffic Agent Mitchell that he would be complaining about the incident and went to his car to get his phone to take a picture of Traffic Agent Mitchell and to call the police.  Before he could enter his car, however, Traffic Agent Mitchell pushed him, and he fell onto his car and then onto the ground.  When Farghaly tried to regain his balance, Traffic Agent Mitchell struck him with what Farghaly testified to be a walkie talkie (although plaintiffs, in their Rule 56 statement, characterize this as a PTD).  *Id.* at 92:7–12; Pl. Rule 56 Statement ¶ 95.  Farghaly then spit on Traffic Agent Mitchell's shirt.  When Traffic Agent Mitchell began to walk away, Farghaly tried to hold his shirt to stop the agent from leaving.  Farghaly called the police at 1:40 p.m. to let them know he had been assaulted.  Two ambulances arrived on the scene, and Farghaly was given a bag of ice for his face.  While Farghaly was inside an ambulance, a police officer asked him to exit the vehicle.  When he did, Farghaly saw that several NYPD cars had arrived.

Defendants have submitted a 46-second video that captures a portion of the altercation between Farghaly and Traffic Agent Mitchell.  Video, Ex. C.  Farghaly does not challenge the accuracy of the video but notes that it begins after the altercation had begun and does not capture the first portion of the altercation.  The video, among other things, indisputably shows Farghaly attempting to restrain Traffic Agent Mitchell before a bystander steps in to separate the two men.  With respect to what occurs in the video, Farghaly testified that he held Traffic Agent Mitchell in

an attempt to restrain him from leaving the scene before the police arrived.  Later, in Farghaly's affidavit and in the memorandum opposing defendants' motion, Farghaly acknowledged that this was part of an attempt to effectuate a citizen's arrest of Traffic Agent Mitchell.

**B.  Officer Soto Arrests Farghaly**

Both parties agree that, while the altercation between Farghaly and Traffic Agent Mitchell was occurring, Officer Soto was in a vehicle, patrolling a sector of Manhattan that spans 53rd to 59th Streets.  He responded to a radio run regarding an assault in progress by driving to Lexington Avenue between 55th and 56th Streets.  By the time he arrived, the interaction between Farghaly and Traffic Agent Mitchell was over.

Officer Soto testified that his knowledge of the incident is derived from conversations he had with Farghaly, Traffic Agent Mitchell, and a civilian bystander, along with the video submitted with defendants' motion.  Plaintiffs do not dispute that Officer Soto spoke with Farghaly and Traffic Agent Mitchell and viewed the video, but they do dispute that he spoke with the civilian witness.

Officer Soto testified that he spoke with Traffic Agent Mitchell first, who stated that he issued Farghaly a parking summons, and that Farghaly "got pissed, acting very belligerent and aggressive, yelling, and screaming."  Soto Dep. at 22:17–19, 24:9–11.  Traffic Agent Mitchell also said that Farghaly impeded him from walking away, that there was some pushing and shoving, and that Farghaly spat in his face.  Following his discussion with Traffic Agent Mitchell, Officer Soto spoke with Farghaly, who stated that he and Traffic Agent Mitchell argued over the parking summons because Farghaly believed he was legally parked.  Farghaly acknowledged that he and Traffic Agent Mitchell had been involved in an argument, but he denied touching Traffic Agent Mitchell.  Officer Soto testified that he did not observe any marks on Farghaly's face, hands, or

4

anywhere else, but he did observe that Farghaly was "very upset, pissed off because he received a parking summons." *Id.* at 30:20–22, 31:13–15.   According to Officer Soto, a large crowd had gathered to watch the dispute between Farghaly and Traffic Agent Mitchell, and Officer Soto questioned people in the area.   He made notes of the statements from one of the witnesses, named Ratzabisagi, who also showed him the video and later sent it to him.

Farghaly testified that he told the police everything that happened to him, including that Traffic Agent Mitchell had struck him and that Farghaly had asserted his innocence.   Farghaly also testified that one of the witnesses to the incident, a manager of a nearby diner, corroborated Farghaly's story to the police.

After his investigation, Officer Soto placed Farghaly under arrest for "assaulting a police officer while he was on duty."   Soto Dep. at 103:20–24; Pl. 50-h 36:25–37:4.   Farghaly was transported to the 17th Precinct, where Officer Soto photographed the left, middle, and right side of his face.   Officer Soto charged Farghaly with Obstructing Governmental Administration in the Second Degree ("OGA"), in violation of Penal Law § 195.05, and Disorderly Conduct: Refusing to Disperse, in violation of Penal Law § 240.20(06).

### C.  Farghaly Accepts an Adjournment in Contemplation of Dismissal and Receives Medical Attention

On November 3, 2015, Farghaly was arraigned and released after accepting an adjournment in contemplation of dismissal ("ACD").

The parties disagree as to whether Farghaly was bruised on the right side of his face. Defendants maintain that bruises are not visible in the photos Officer Soto took of Farghaly after he was arrested.   *See* Ex. G.   Farghaly testified that, after his release on November 3, 2015, his wife, plaintiff Mohamed, took pictures of Farghaly's face, which show a bruise on the right side, where he was struck by Traffic Agent Mitchell's PTD.   *See* Ex. J.

Farghaly testified that he requested medical attention at the precinct, but that he did not pursue his request because he was told it would extend his stay in police custody.  He sought medical treatment for his lower back beginning on November 3, 2015 that has continued until the present, and was diagnosed with lumbosacral contusion with disc herniation at several levels.  Dr. Koyen Report, Ex. 5.  Farghaly also lost his Taxi and Limousine Commission ("TLC") license for several months and was not able to work.  Mohamed, who had never worked outside of the home before the incident, was forced to take a job.  Finally, Farghaly testified that, because he is no longer able to sit for 12 hours a day, he now works in a warehouse.

## II.  Procedural History

On July 28, 2017, plaintiffs filed an amended complaint that dropped several claims raised in the initial pleading, including, *inter alia,* claims for municipal liability pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  On August 3, 2018, plaintiffs filed a second amended complaint ("SAC") that dropped several additional claims: conspiracy under 42 USC §1985; §1983 false arrest against Traffic Agent Mitchell; the §1986 "negligent to prevent" claim against all defendants; and abuse of process against Traffic Agent Mitchell.

On June 27, 2019, I held a pre-motion conference at which plaintiffs' counsel clarified their pleading.  The excessive force claim against Officer Soto was voluntarily dismissed.  June 27, 2019 Trans. at 9:18–25.  Because the *Monell* claims had been dropped, plaintiffs' counsel agreed that no § 1983 claims remain against the City.  *Id.* at 9:7–10.  Plaintiffs' counsel also acknowledged that Farghaly does not raise the failure to intervene claim as a separate count in the SAC, but noted that allegations within the SAC are sufficient to describe a failure to intervene claim; this claim is limited to a failure to intervene by Traffic Agent Mitchell with respect to his false arrest by Officer Soto.  *Id.* at 6:11–13, 8:18–25; *see also* SAC ¶¶ 74–75.

Finally, in their memorandum in opposition to defendants' motion for summary judgment, plaintiffs dropped several New York law claims: negligent infliction of emotional distress, negligence in hiring and retaining, and negligence in training and supervising.  Pl. Opp at 1.

## III.  Summary Judgment Standard

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  In determining whether to grant summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010).  However, the mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV.  Discussion

### A.  Defendants' Motion to Strike

As an initial matter, defendants argue that plaintiffs' Rule 56.1 counterstatement should be stricken to the extent that it contains prolix legal arguments in violation of Local Civil Rule 56.1(b).  Under that rule, a nonmoving party's papers opposing a summary judgment motion shall include numbered paragraph responses corresponding to the moving party's Rule 56.1 statement, and may include "additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  "A district court has broad discretion to determine whether to overlook a party's failure to comply with local

court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Here, I have considered any facts set forth in the counterstatement supported by admissible evidence but have disregarded any assertions unsupported by citations to documents in the record, or that otherwise constitute impermissible legal arguments or conclusions. *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 396 (S.D.N.Y. 2015), *aff'd sub nom. Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83 (2d Cir. 2019).[2]

### B.  Defendants' Motions to Preclude Certain Evidence

#### i.  Evidence Not Produced in Discovery

Defendants object to plaintiffs' use of Farghaly's phone log (Ex. 7) on the ground that it was not produced in discovery. It is true that, ordinarily, a party may not rely on any documents not produced in discovery in opposing a summary judgment motion. *See, e.g.*, *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 269 n.4 (S.D.N.Y. 2014) (collecting cases), *aff'd*, 882 F.3d 394 (2d Cir. 2018). However, for purposes of this motion, that issue is inconsequential, as consideration of the phone log would not alter the outcome of this opinion. Although Farghaly relies on the telephone log for evidence that it is "undisputed that [he] called the Police in this matter," Pl. Opp. at 20, this assertion is consistent with Farghaly's testimony that he called 911 before trying to restrain Traffic Agent Mitchell.

Defendants also seek to preclude plaintiffs from supplementing the summary judgment record with Farghaly's affidavit dated September 12, 2019. "A party may not create an issue of fact that will defeat summary judgment by submitting an affidavit that contradicts the party's prior deposition testimony, but it is permissible to clarify by affidavit ambiguous or incomplete

---

[2] Defendants also move to strike excess pages of plaintiffs' 36-page opposition brief. Following the filing of the motion papers, however, I granted plaintiffs' motion for leave to file excess pages *nunc pro tunc*.

deposition testimony." *Figueroa v. Mazza*, 825 F.3d 89, 109 n.15 (2d Cir. 2016). Although portions of the affidavit contradict Farghaly's deposition, those statements do not create triable issues of fact that influence the outcome of defendants' motion.[3] Statements in the affidavit that clarify, but do not contradict, Farghaly's testimony will be considered for purposes of this motion.[4]

### i.    Expert Reports

Defendants also seek to preclude plaintiffs' two expert reports, authored by Dr. Yury Koyen, M.D., and Dr. Douglas J. Uhlig, Ph.D. Exs. 5, 6. Dr. Koyen diagnosed Farghaly with lumbosacral contusion with disc herniation at several levels with radiculopathy causally related to injuries he suffered as a result of the incident with Traffic Agent Mitchell. Ex. 5 at 3. Dr. Uhlig diagnosed Farghaly with major depression and anxiety disorder, and opined that Farghaly's psychological distress was the result of the incident with Traffic Agent Mitchell. Ex. 6 at 2. He also diagnosed Mohamed with major depression anxiety disorder and post-traumatic stress disorder and opined that her diagnoses resulted from her codependence on her husband and the lack of financial support. *Id.*

To the extent that defendants are challenging the admissibility of the reports themselves, I make no determination on summary judgment as to whether the reports will be admissible at trial. But I decline to strike them for purposes of the summary judgment motion. Defendants' argument

---

[3] For example, Farghaly's affidavit states that he "confusedly thought [he fell onto] . . . the fire-hydrant," when, in fact, he fell onto a car, Pl. Aff. ¶ 18, in contradiction of his testimony that he fell onto the fire hydrant. Pl. Dep. at 101:20. As discussed below, other issues of material fact preclude the grant of summary judgment on Farghaly's excessive force, assault, and battery claims.

[4] Although Farghaly states, in his affidavit, that he attempted to restrain Traffic Agent Mitchell because he "felt compelled to attempt a citizen's arrest of [him]," Pl. Aff. ¶¶ 16–17, he did not discuss a "citizen's arrest" during his deposition. Rather, he testified that he attempted to hold Traffic Agent Mitchell to keep him on the scene until the police arrived. Pl. Dep. at 105:19–25. Whether the statements are considered to be a clarification of, or in contradiction to, Farghaly's deposition is of no moment to any claims, however, because, as described below, Farghaly was not entitled to restrain, hold, or effectuate a citizen's arrest of Traffic Agent Mitchell.

that a court cannot grant summary judgment on the basis of expert reports does not address the issue.  Here, plaintiffs do not seek summary judgment on the basis of expert reports, but merely rely on the expert reports to convey the substance of the opinions as to which the experts may testify at trial.[5]  It is apparent from the submissions that Dr. Koyen is a medical doctor with a specialty in the field of Physical Medicine and Rehabilitation whose conclusions concerning Farghaly's spine were made upon review of his records, which included multiple Magnetic Resonance Imaging ("MRI") scans, and a physical examination of Farghaly.  Ex. 5.  And Dr. Uhligh is a Licensed Psychologist in New York whose conclusions were made after a mental status examination of Farghaly and Mohamed.  Ex. 6.  Defendants' request to preclude these reports from consideration on the summary judgment motion is denied.

### C.  False Arrest and False Imprisonment Claims

Farghaly brings claims for false arrest and false imprisonment against Officer Soto and false imprisonment and failure to intervene in his unlawful arrest against Traffic Agent Mitchell.

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).  "The elements of a claim for false arrest under New York law are that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  *Youngblood v. City of New York*, 2019 WL 6216498, at *5 (S.D.N.Y. Nov.

---

[5] Although the affidavits accompanying the expert reports state that the qualifications of each expert are listed in the curriculum vitae accompanying each report, Exs. 5 ¶ 3; 6 ¶ 3, neither exhibit actually includes the curriculum vitae of the witness.  Plaintiffs are directed to produce the experts' curriculum vitae before the next pre-trial conference.

21, 2019) (quotation omitted).  The analysis for a false imprisonment claim is the same as that of a false arrest claim.  *See Jean v. City of New York*, 512 F. App'x 30, 31 (2d Cir. 2013).

Defendants do not dispute the first three elements.  With respect to the fourth element, Officer Soto's warrantless arrest of Farghaly is "privileged" if the officer had probable cause to arrest him.  *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003); *see also Weyant*, 101 F.3d at 853 (referring to probable cause as a "complete defense" to a § 1983 action for false arrest).  Defendants are entitled to summary judgment on Farghaly's false arrest claim "if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable." *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007).

A police officer has probable cause to arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852.  The probable cause determination may be based on information received from someone, typically the victim or an eyewitness, unless there is reason to doubt that person's truthfulness.  *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014).  The reviewing court "must consider [only] those facts available to the officer at the time of the arrest and immediately before it." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013).  The inquiry is limited to "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006).

### i. Officer Soto

Defendants argue that Officer Soto had probable cause to arrest Farghaly for OGA.  A person is guilty of OGA when he "intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from

performing an official function[.]"  N.Y. Penal Law § 195.05.  Along with intent and actual or attempted obstruction or impairment of a government function, "[t]he crime requires one of the following: (1) intimidation, (2) physical force or interference, or (3) any independently unlawful act."  *Dancy v. McGinley*, 843 F.3d 93, 111 (2d Cir. 2016) (internal citation and quotation marks omitted).  When OGA is based on interference, the "interference must be physical, and must obstruct an official function authorized by law."  *Id.*

Officer Soto was entitled to rely on the statements from Traffic Agent Mitchell, as both an eyewitness and the victim of Farghaly's actions, that Farghaly impeded his ability to walk away and continue performing his official functions of issuing tickets for traffic violations.  *See Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012).  Although plaintiffs dispute the accuracy of Traffic Agent Mitchell's account of the incident, they do not dispute that Traffic Agent Mitchell conveyed the account to Officer Soto.  They also do not dispute that Traffic Agent Mitchell, who was in uniform and ticketing cars while patrolling the block, was a public servant performing his official duties.  Having received that information from Traffic Agent Mitchell, Officer Soto had probable cause to arrest Farghaly so long as Officer Soto had no reason to doubt Traffic Agent Mitchell's veracity.  *See, e.g.*, *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).  Officer Soto's additional investigations at the scene, including, at a minimum, his interview of Farghaly and viewing of the video of the events, do not provide any reason for him to doubt Traffic Agent Mitchell's veracity.[6]  Although Farghaly testified that he "explained[ed to Officer Soto] exactly what happened," Pl. Dep. at 127:20, the video evidence shows Farghaly attempting to restrain

---

[6] Officer Soto also made note in his memo book of a witness whom he testified to having interviewed, Ratzabisagi, who also sent him the video.  While Farghaly disputes that Officer Soto spoke with a witness named Ratzabisagi, he admits that officers at the scene spoke with bystanders.

Traffic Agent Mitchell to prevent him from leaving the altercation, which corroborated Traffic Agent Mitchell's version of the events.

Farghaly argues that his attempted restraint of Traffic Agent Mitchell was an effort to effectuate a citizen's arrest and that Officer Soto failed to fully investigate the situation. While an officer may not "deliberately disregard facts known to him which establish justification" that would negate probable cause, there is no "duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." *Tavernier*, 316 F.3d at 135–36. In other words, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). It is unclear whether Farghaly claims that he told Officer Soto that he held Traffic Agent Mitchell to perform a citizen's arrest.[7] Even assuming that he did, he offers no sound basis for concluding that a dispute with a traffic agent is cause for a citizen's arrest of that agent. An arresting officer "do[es] not have to credit or investigate an arrestee's self-serving claims." *Michaels v. City of New York*, 2011 WL 570125, at *6 (S.D.N.Y. Feb. 16, 2011). In addition, while plaintiffs argue that Officer Soto's investigation was incomplete, they do not identify any additional actions he should have undertaken to investigate the situation. *See Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 364 (2d Cir. 2011) ("In any event, it is unclear what additional investigative steps would have been fruitful."). Farghaly's claims of false arrest and false imprisonment against Officer Soto are dismissed.

---

[7] Farghaly testified that he explained to the police "exactly what happened from the minute that I saw him give me the ticket and the discussion that we had." Pl. Dep. at 127:20–22. In his affidavit, Farghaly states that he described Traffic Agent Mitchell's verbal and physical abuse, but does not mention that he told the police officers on the scene that the purpose of his holding Traffic Agent Mitchell was to effectuate a citizen's arrest. *See* Pl. Aff. ¶¶ 20–21.

### iii. Traffic Agent Mitchell

Farghaly asserts that Traffic Agent Mitchell is liable for false imprisonment pursuant to §

1983 because he "presented facts to Officer Soto that were at variance from the truth and thereby

improperly influenced Officer Soto in arresting and imprisoning [Farghaly]."  Pl. Opp. at 26.

A person may be held liable for false imprisonment if he "causes or directs an . . .

imprisonment in New York" by "induc[ing] the officer to act, such as taking an active part in the

arrest and procuring it to be made or showing active, officious and undue zeal to the point where

the officer is not acting of his own volition."  *Curley v. AMR Corp*., 153 F.3d 5, 13–14 (2d Cir.

1998).   Here, there is no evidence that Traffic Agent Mitchell was personally involved in

Farghaly's imprisonment.  *See Reen v. City of New York*, 2018 WL 4608194, at *8 n.7 (E.D.N.Y.

Sept. 25, 2018) (dismissing false arrest claim against traffic agent who reported details of the

plaintiff's actions to police officer, leading to plaintiff's arrest).  As a civilian traffic agent, Mitchell

was "not a peace officer under New York law" and had "no authority to make an arrest."  *Savarese*

*v. City of New York*, 2021 WL 2784501, at *18 (S.D.N.Y. July 2, 2021).  While it is undisputed

that Traffic Agent Mitchell provided information to Officer Soto, a person cannot be held liable

for false imprisonment for merely "seeking police assistance or furnishing information to law

enforcement authorities who are then free to exercise their own judgment as to whether an arrest

should be made and criminal charges filed."  *Delince v. City of New York*, 2011 WL 666347, at *4

(S.D.N.Y. Feb. 7, 2011).  And plaintiffs have presented no evidence that Traffic Agent Mitchell

induced, procured, or otherwise instigated Officer Soto to arrest Farghaly.  *See Curley*, 153 F.3d

at 13.  Indeed, Traffic Agent Mitchell did not even call the police; Farghaly did.  Moreover,

because he viewed the video before arresting Farghaly, Officer Soto's conversation with Traffic

Agent Mitchell was not the only evidence upon which Officer Soto relied in determining probable cause.  Farghaly's false imprisonment claim against Traffic Agent Mitchell is dismissed.

### D.  Failure to Intervene Claim

Farghaly argues that Traffic Agent Mitchell is liable for failure to intervene to prevent his arrest by failing to disclose to Officer Soto that he struck Farghaly on his face several times.  However, "[f]ailure to intervene claims are contingent upon the disposition of the primary claims underlying the failure to intervene claim."  *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 646 (S.D.N.Y. 2020).  Because the predicate claims for false arrest and false imprisonment do not survive summary judgment, Farghaly's failure to intervene claim is dismissed.

### E.  Excessive Force Claim

Farghaly asserts an excessive force claim under the Fourth and Fourteenth Amendments against Traffic Agent Mitchell based on allegations that he pushed and struck Farghaly.  Because this claim arises outside of the context of an arrest or seizure, it is appropriately brought only under the Due Process Clause of the Fourteenth Amendment.  *Tierney v. Davidson*, 133 F.3d 189, 199 (2d Cir. 1998).  The use of physical force by a police officer "does not constitute a seizure when it is not part of an effort to restrain the plaintiff," *Abujayyab v. City of New York*, 2018 WL 3978122, at *5 (S.D.N.Y. Aug. 20, 2018), and there is no evidence that Traffic Agent Mitchell sought to apprehend or subdue Farghaly.  *See Bogart v. City of New York*, 2016 WL 4939075, at *7–8 (S.D.N.Y. Sept. 6, 2016).  Indeed, the video evidence and Farghaly's testimony demonstrate that it was he who sought to restrain Traffic Agent Mitchell—not the other way around.  Accordingly, Farghaly's claim for excessive force under the Fourth Amendment is dismissed.

"[I]n analyzing an excessive force claim" under the Due Process Clause of the Fourteenth Amendment, as under the Fourth Amendment, "a court must determine whether the force was

objectively unreasonable in light of the facts and circumstances of each particular case." *Lombardo v. City of St. Louis, Missouri*, __ U.S. ____ , 141 S. Ct. 2239, 2241 n.2 (2021) (quotation marks and citation omitted).   In the context of a pretrial detainee's excessive force claim, the Supreme Court identified that factors bearing upon the reasonableness or unreasonableness of the force used include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."   *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).   Although the test for Fourteenth Amendment excessive force claims has historically been described as a "shocks the conscience" standard, the Second Circuit, in holding that the objective reasonableness test outlined in *Kingsley* applies to all Fourteenth Amendment excessive force claims, explained, "*Kingsley* teaches purposeful, knowing or (perhaps) reckless action that uses an objectively unreasonable degree of force *is* conscience shocking."   *Edrei v. Maguire*, 892 F.3d 525, 535−36 (2d Cir. 2018) (emphasis in original).   The assessment "requires careful attention to the facts and circumstances of each particular case."   *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Viewing the facts in the light most favorable to Farghaly, a reasonable jury could find that the force used against him was excessive under the *Kingsley* factors.   First, a jury could conclude that there was no need for Traffic Agent Mitchell to use force against Farghaly initially.   Farghaly testified that Traffic Agent Mitchell struck him three times: first, by pushing him into a car as he went to retrieve his phone; second, by striking him in the face as he attempted to regain his balance; and third, by pushing him onto a fire hydrant (or, as he later stated in his affidavit, into a car near a fire hydrant) after Farghaly had spit on and tried to restrain Traffic Agent Mitchell.   Although

defendants argue that a need for force arose after Farghaly assaulted, spit on, and attempted to hold Traffic Agent Mitchell, two of Traffic Agent Mitchell's three alleged acts of force occurred before the actions cited by defendants.  In other words, under Farghaly's version of events, Traffic Agent Mitchell was the first to physically use force against Farghaly.

Second, a reasonable jury could conclude that the degree of force Traffic Agent Mitchell used was disproportionate.  If Farghaly's version of events is credited, Traffic Agent Mitchell pushed and struck Farghaly with his PTD at a time when Farghaly posed no threat to the safety of him or anyone else in the area.

Third, Farghaly has raised a genuine issue of fact as to the extent of his injuries.  Although a "de minimis use of force will rarely suffice to state a Constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), an injury need not be severe or permanent to maintain a claim that the force used was objectively unreasonable.  *See, e.g., Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004).  In this case, a reasonable jury could conclude that the photos of Farghaly show bruising and inflammation of his right cheek and finger, in addition to a bloody scrape on the cheek.  Ex. J.  Whether or not those injuries are sufficient, Farghaly testified that he requested medical attention at the precinct, although he dropped his request when he was told it would delay his release, and instead sought treatment beginning on the day he was arraigned and released from jail.  In addition, Dr. Koyen reviewed MRIs of Farghaly taken on April 23, 2016 and May 15, 2018, physically examined Farghaly on December 27, 2018, and opined that Farghaly sustained "significant trauma" to his lower back and that his "injuries and limitations" were "causally related to the accident sustained by him on 11/02/15." Ex. 5 at 2–4.

Fourth, there is no evidence that Traffic Agent Mitchell attempted to temper or limit the amount of force used. Farghaly testified that, before striking him, Traffic Agent Mitchell did not issue a warning to Farghaly and did not walk away after the situation had begun to escalate.

Finally, I decline to grant summary judgment on the basis of qualified immunity because it is subject to the same "genuine, material, factual disputes" as the excessive force claim. *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 764 (2d Cir. 2003).

I note, however, that, although I must deny summary judgment as to the excessive force claim based on disputed facts, the evidence supporting Farghaly's version of events is thin. The video, the accuracy of which Farghaly does not dispute although he notes that it is incomplete, indisputably depicts Farghaly aggressively holding onto Traffic Agent Mitchell, and therefore supports Traffic Agent Mitchell's account that Farghaly was "aggressive" and "combative" and that Traffic Agent Mitchell attempted to walk away before the situation escalated. Mitchell Dep. at 43:16, 46:3.

In sum, defendants' summary judgment motion is granted as to the Fourth Amendment excessive force claim, but denied as to the Fourteenth Amendment excessive force claim.

### F. First Amendment Retaliation Claim

Farghaly claims that his First Amendment rights were violated because, after he protested the ticket Traffic Agent Mitchell had issued him, Traffic Agent Mitchell used unauthorized force for the purpose of silencing his protests.[8]

---

[8] Although Farghaly asserts this claim against Traffic Agent Mitchell and Officer Soto in the SAC, *see* SAC ¶¶ 71–76, plaintiffs' counsel made clear, both in the description of the claim during the June 27, 2019 conference, and in their opposition brief, that they are proceeding against Traffic Agent Mitchell only. *See* June 27, 2019 Trans. at 12:8–18 (describing that the First Amendment claim related to Traffic Agent Mitchell's use of force); Pl. Opp. at 14–17 (addressing the claim as to Traffic Agent Mitchell only). Where, as here, "abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole,

18

To prevail on a First Amendment retaliation claim, a plaintiff must show: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). "A plaintiff has standing if he can show either that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Id.* (collecting cases).

Farghaly's speech protesting the issuance of a parking ticket is protected under the First Amendment. *Cf. City of Houston. v. Hill*, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."); *see also Beechwood Restorative Care Center v. Leeds,* 436 F.3d 147, 152 (2d Cir. 2006).

As to the second element, however, even construing the facts in the light most favorable to Farghaly, there is no evidence that Traffic Agent Mitchell's actions were motivated by Farghaly's exercise of his First Amendment rights. To the contrary, according to Farghaly's own version of the facts, Traffic Agent Mitchell responded to Farghaly's exercise of his free speech rights with indifference, and even tried to walk away. Farghaly testified that, after he protested the issuance of the parking summons, Traffic Agent Mitchell attempted to move on to issue a summons to the next car and stated, "I [am] done already." Pl. Dep. at 77:16, 78:10. He also testified that Traffic Agent Mitchell was already issuing a ticket to the next car before he told Farghaly to "get the hell out of [his] face" and pushed him. *Id.* at 88:6–7. In his affidavit, Farghaly describes Traffic Agent Mitchell's behavior as dismissive and noted that, after Farghaly told Traffic Agent Mitchell he was going to complain, Traffic Agent Mitchell was "totally indifferent" and "stat[ed] coldly 'do

---

district courts may conclude that abandonment was intended." *Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014). I deem plaintiffs' First Amendment claim abandoned as to Officer Soto.

19

whatever you feel like it.'"  Pl. Aff. ¶¶ 5, 9–10.  Farghaly characterized Traffic Agent Mitchell's "final display of power" as his attempt "to walk away."  *Id.* ¶ 12.  Because Traffic Agent Mitchell reacted to Farghaly's protests by ignoring him and walking away, no reasonable jury could conclude that his conduct was motivated by the purpose of silencing Farghaly's protest.

Finally, with respect to injury, Farghaly's argument that Traffic Agent Mitchell's actions interfered with his ability to complain to the police is belied by Farghaly's own testimony that he called the police while Traffic Agent Mitchell remained on the scene and later gave the police a statement explaining his version of events.  Pl. Dep. at 103:11–25, 127:8–10; Pl. Aff. ¶¶ 15, 20.  Thus, his speech was not chilled or curtailed in any way.  *See, e.g.*, *Dorsett*, 732 F.3d at 161; *Rupp v. City of Buffalo*, 2021 WL 1169182, at *8 (W.D.N.Y. Mar. 29, 2021).[9]

Defendants' motion for summary judgment on Farghaly's First Amendment retaliation claim against Traffic Agent Mitchell is granted, and the claim is dismissed.

### G.  State Law False Arrest and False Imprisonment Claims

Because claims for false arrest and false imprisonment are analyzed no differently under New York law than under § 1983, summary judgment is granted in favor of defendants on Farghaly's state law claims for false arrest and imprisonment against Officer Soto and Traffic Agent Mitchell.  *See Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003).

### H.  State Law Assault and Battery Claims

"With the exception of the state actor requirement, the elements of a Section 1983 excessive force claim and state law assault and battery claims are substantially identical."

---

[9] It is unclear whether Farghaly also intends to assert a First Amendment claim based on his physical injuries.  The constitutional violations at issue in the cases to which plaintiffs cite in their analysis are excessive force, and not First Amendment retaliation, violations.  *See* Pl. Opp. at 16–17.  Even assuming that he does, the claim nevertheless fails because he has not presented any evidence that the alleged use of force was motivated by his exercise of First Amendment rights.

*Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013).  As stated above, there are disputed material facts as to Farghaly's excessive force claim against Traffic Agent Mitchell that preclude summary judgment on the state law assault and battery claims against him. *See, e.g.*, *Dasrath v. City of New York*, 2018 WL 10501877, at *8 (E.D.N.Y. Sept. 25, 2018).

As to Officer Soto, Farghaly's state law assault and battery claims are based solely on Officer Soto's arrest of Farghaly.  While placing an individual under arrest without probable cause may constitute assault and battery under New York law, regardless of the force used, *see Loftin v. City of New York*, 2017 WL 3614437, at *7 (E.D.N.Y. Aug. 21, 2017), here, there was probable cause to arrest Farghaly for OGA.  Farghaly makes no allegation and offers no evidence that Officer Soto used unreasonable force in the course of the arrest or through any other encounter with Farghaly.  Thus, his assault and battery claim against Officer Soto is dismissed.  *See Cornett v. Brown*, 2007 WL 2743485, at *9 (E.D.N.Y. Sept. 17, 2007), *aff'd sub nom. Cornett v. Jamison*, 326 F. App'x 624 (2d Cir. 2009).

## I.   State Law Claim for Intentional Infliction of Emotional Distress

Farghaly asserts that Traffic Agent Mitchell is liable for intentional infliction of emotional distress because he used racially abusive language and engaged in violent conduct that physically injured Farghaly.  But "the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory."  *Taylor v. City of Rochester*, 458 F. Supp. 3d 133, 145 (W.D.N.Y. 2020).  Since any claim arising out of Traffic Agent Mitchell's use of physical force is subsumed under Farghaly's § 1983 excessive force or state law assault and battery claims, it is dismissed.  *See, e.g.*, *Centeno v. City of New York*, 2019 WL 1382093, at *10 (S.D.N.Y. Mar. 27, 2019).  And even if the single ethnically-targeted remark is treated as distinct from the physical altercation between Farghaly and Traffic Agent Mitchell, I cannot conclude that, standing alone,

it would be sufficient to meet the very stringent standard for a claim of intentional infliction of emotional distress.  *See Spagnuolo v. Howell*, 814 F. App'x 614, 619 (2d Cir. 2020) (a claim for intentional infliction of emotional distress under New York law requires "extreme and outrageous conduct" and "severe mental pain or anguish" that was "inflicted through a deliberate and malicious campaign of harassment or intimidation"); *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121–22 (1993) (the conduct must "go beyond all possible bounds of decency, and [] be regarded as atrocious, and utterly intolerable in a civilized community").[10]

Farghaly contends that Officer Soto also intentionally inflicted emotional distress by accepting Traffic Agent Mitchell's version of events over his own.  For the reasons stated above, a police officer is generally entitled to rely on information gleaned from informants in justifying the existence of probable cause.  *Panetta*, 460 F.3d at 395.  There is no triable issue as to whether Officer Soto's conduct was sufficiently "extreme or outrageous" where, as here, the uncontroverted evidence shows that Officer Soto acted upon eyewitness statements and video evidence in arresting Farghaly.

### J.   State Law Claim for Abuse of Process

According to Farghaly, Officer Soto arrested and initiated prosecution to "suppress him from complaining about police misconduct which included among other things being unlawfully and unjustifiably assaulted, battered, arrested, and detained."  Pl. Opp. at 34.  In order to prevail on a claim for malicious abuse of process in New York, a plaintiff must show that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral

---

[10] I note that Farghaly himself treats the remark as part of the proof of motive for the excessive force claim, and not as a separate claim.  *See* Pl. Opp. at 9 n.12.

objective that is outside legitimate ends of process." *Savino v. City of New York*, 331 F.3d 63, 76–77 (2d Cir. 2003).  The "crux of a malicious abuse of process claim is the collateral objective element," *Douglas v. City of New York*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009), which requires that the plaintiff show that the defendant "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution."  *Savino*, 331 F.3d at 77.  Under New York law, probable cause will defeat an abuse of process claim under at least some circumstances. *Tuccillo v. Cty. of Nassau*  723 F. App'x 81, 82 (2d Cir. 2018).  For example, in *Shields v. City of New York*, cited by the Court in *Tuccillo*, the First Department held that probable cause barred an abuse of process claim where the plaintiffs had "point[ed] to no evidence that defendants were motivated by some collateral objective."  141 A.D.3d 421, 422 (1st Dep't 2016).

Here, there was probable cause for the arrest, and none of the evidence Farghaly offers supports the existence of a collateral motive on Officer Soto's part.  Although Farghaly points to some conflicts between Officer Soto's testimony and that of Traffic Agent Mitchell, that does not support the proposition that Officer Soto aimed to achieve any collateral objective in arresting Farghaly, let alone that he sought to silence or suppress his complaints.  The "mere  conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny" a motion for summary judgment.  *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42 (2d Cir. 1986).  Moreover, because Officer Soto had probable cause to arrest Farghaly, he is, at a minimum, entitled to qualified immunity on the abuse of process claim.  *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 960 (2d Cir. 2015).  Defendants' motion for summary judgment as to Farghaly's abuse of process claim is granted and the claim is dismissed.

**K.  State Law Loss of Consortium Claim**

Plaintiff Mohamed asserts a state law claim for loss of consortium as a result of the injuries her husband sustained.  Because Farghaly's state law assault and battery claims against Traffic Agent Mitchell survive, so too does Mohamed's loss of consortium claim.  *See, e.g.*, *Negron v. City of New York*, 976 F. Supp. 2d 360, 374 (E.D.N.Y. 2013).  Because no claims remain against Officer Soto, however, the loss of consortium claim against him is dismissed.

**L.  Municipal Liability for State Law Claims**

Plaintiffs' state law claims for assault, battery, and loss of consortium survive summary judgment as to Traffic Agent Mitchell and therefore remain viable against the City.  *Bellamy v. City of New York*, 914 F.3d 727, 744 n.17 (2d Cir. 2019); *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 503 (N.D.N.Y. 2017).  Farghaly's state law claims for false arrest, false imprisonment, intentional infliction of emotional distress, and abuse of process are dismissed as to the City.

## V.   Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted as to Farghaly's federal and state law claims for false arrest and false imprisonment; federal claims for First Amendment retaliation and excessive force under the Fourth Amendment; and state law claims for assault and battery against Officer Soto, intentional infliction of emotional distress, and abuse of process.   Thus, all claims against Officer Soto are dismissed.   The motion is otherwise denied.   The claims that remain to be adjudicated are Farghaly's excessive force claim under the Fourteenth Amendment against Traffic Agent Mitchell; his state law assault and battery claims against Traffic Agent Mitchell and the City; and Mohamed's state law loss of consortium claim against Traffic Agent Mitchell and the City based on the remaining state law claims.

**SO ORDERED.**

    /s/
**NINA GERSHON**
**United States District Judge**

September 17, 2021
Brooklyn, New York

25