UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

AKRAM FARGHALY and RANIA MOHAMED,

                              Plaintiff(s),

    —against—

THE CITY OF NEW YORK, NEW YORK POLICE          Dkt No: 16 CV 06660
DEPARTMENT TRAFFIC AGENT MARION                  (NG)(SMG)
MITCHELL, SHIELD # 2532, and NEW YORK
POLICE DEPARTMENT POLICE OFFICER ALVIN
SOTO, SHIELD # 25083,

                              Defendant(s).

-----------------------------------------------------------------X


MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE*.


Rehan Nazrali, Esq.
Attorney for Plaintiffs
299 Broadway – 17th Floor
New York, NY 10007
(646) 331-9378

1

## Table of Contents

**Introductory Statement**   3

Lawful Arrest   3

Dismissed Claims   3

The Court should maintain focus on the sole issue for the jury to determine: 4

Combining the federal offense of excessive force with the State claim for assault and battery would unduly hinder plaintiff's ability to seek damages for the aggravation of the offense through the accompanying words.   5

The Second Amended Complaint does in fact plead a claim of vicarious liability on the City's part.   5

The SAC pleads all the elements of vicarious liability under New York law.   6

There is no good reason shown by the defendants to prevent calling defendant City of New York what it is.   7

The Patrol Guide   7

FRE 404(b)(1) does not support defendants' argument to preclude inquiry into defendant Mitchell's history.   7

Agent Mitchell's Deposition.   9

Suggestion of Dollar Amount   9

Table of Authorities

**Cases & Statutes**

*Am. Tissue, Inc. v Donaldson*, 351 F.Supp.2d 79 (SDNY 2014)   6
*Consorti v Armstrong World Indus.*, 72 F.3d 1003 (2d Cir. 1995)   9
*Edrei v. Maguire*, 892 F.3d 525, 535-36 (2d Cir. 2018)   4
*Farghaly v City*, 2021 US Dist Lexis 177593 at *21.   5
FRE 404(b)(1)   7
*Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).   5
*Jones v Poole*, 2007 U.S. Dist. Lexis 66020, 7-Civ-951 (EDNY)   3
*Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015).   4
*Lombardo v. City of St. Louis, Missouri*, ___ U.S. ___, 141 S. Ct. 2239, 2241 n.2, 210 L. Ed. 2d 609 (2021)   4
*Triolo v Nassau Cnty.*, 2022 US App Lexis 1786   6

**Introductory Statement**

This memorandum is respectfully submitted in opposition to defendants' motion *in limine*. We will begin by examining each of the defendants' claims in order:

*Lawful Arrest*

The defendants' request to charge the jury that plaintiff's arrest was lawful should be denied. The wrongful arrest claim is not in the case any longer. There is no need to instruct the jury about matters that are impertinent to plaintiffs' claims, and can only serve to confuse the jury by injecting irrelevant matter into their considerations. There is no error in refusing to instruct the jury regarding irrelevancies. See, *e.g., Jones v Poole*, 2007 U.S. Dist. Lexis 66020, 7-Civ-951 (EDNY). Charging the jury with respect to anything connected to the arrest can only distract the jury from the facts that should control the verdict. The sole question for the jury to determine on the excessive force and battery claims is whether Agent Mitchell's conduct was reasonable under Fourteenth Amendment standards. The arrest can only serve to tilt the playing field without any reason for doing so.

*Dismissed Claims*

The defendants' request at Point IA of their memorandum to preclude reference to the claims that have been dismissed is simply a waste of the Court's time. Plaintiff never intended to make reference to those claims or

3

obtain damages from them and has no issue with an order mandating silence on the subject. The order should, of course, be reciprocal and preclude the defendants from making reference to the arrest, officer Soto's probable cause for the arrest, the history of dismissed claims in this case or any other adnexal issues.

*The Court should maintain focus on the sole issue for the jury to determine:*

> "[I]n analyzing an excessive force claim" under the Due Process Clause of the Fourteenth Amendment, as under the Fourth Amendment, "a court must determine whether the force was objectively unreasonable in light of the facts and circumstances of each particular case." *Lombardo v. City of St. Louis, Missouri,* U.S. , 141 S. Ct. 2239, 2241 n.2, 210 L. Ed. 2d 609 (2021) (quotation marks and citation omitted). In the context of a pretrial detainee's excessive force claim, the Supreme Court identified that factors bearing upon the reasonableness or unreasonableness of the force used include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson,* 576 U.S. 389, 397, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015). Although the test for Fourteenth Amendment excessive force claims has historically been described as a "shocks the conscience" standard, the Second Circuit, in holding that the objective reasonableness test outlined in *Kingsley* applies to all Fourteenth Amendment excessive force claims, explained, "*Kingsley* teaches purposeful, knowing or (perhaps) **[*23]** reckless action that uses an objectively unreasonable degree of force *is* conscience shocking." *Edrei v. Maguire,* 892 F.3d 525, 535-36 (2d Cir. 2018) (emphasis in original). The assessment "requires careful attention to the facts and circumstances of each particular case." *Graham v.*

4

>*Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).
>*Farghaly v City*, 2021 US Dist Lexis 177593 at *21.

The lawfulness or not of Akram's arrest is not in the case, and instructing the jury about that non-issue can only lead to confusion. The arrest is irrelevant to this case.

*Combining the federal offense of excessive force with the State claim for assault and battery would unduly hinder plaintiff's ability to seek damages for the aggravation of the offense through the accompanying words.*

Although the standard for finding excessive force is substantively the same as that for assault and battery, conflating the State and Federal claims would gloss over the distinctively-constitutional aspects of plaintiffs' excessive force claim. Plaintiffs offer to prove that Agent Mitchell exacerbated his use of force by bookending it with his order that plaintiff Farghaly "go back to his country." *America* has been plaintiff Farghaly's home since his naturalization, and he is justly proud of his new citizenship. Agent Mitchell's denunciation of plaintiff's American-ness aggravated the whole assaultive process. This aggravation applies to the federal excessive force claim and needs to be kept distinct in order for the jury to evaluate all of plaintiffs' claims.

*The Second Amended Complaint does in fact plead a claim of vicarious liability on the City's part.*

Precluding reference to the City of New York is completely unwarranted. The request to excise the City from the caption of the case is simply an

5

untimely and procedurally-defective motion for summary judgment. While the *Monell* claims are out of the case, the liability of the City of New York, as Agent Mitchell's employer, is a matter of hornbook law. The Second Amended Complaint, in pleading the first cause of action for excessive force, alleges that Agent Mitchell was acting as an employee of the City in committing the acts complained of. (cite) The defendants' assertion that "plaintiffs do not allege a claim for respondeat superior against the City." No detail is offered as to how, and in what respect, the Second Amended Complaint fails to plead a case for the City's vicarious liability. The SAC alleges that everything that Agent Mitchell did, he did as an employee of the City acting within the scope of his employment. SAC at 90, 95.

The SAC pleads all the elements of vicarious liability under New York law.

The defendants' recurrent insistence that the SAC does not plead vicarious liability is simply a mistake, since it is unmistakable that the SAC explicitly pleads that Agent Mitchell was acting as an employee of the City and within the scope of his employment. The defense attempt to preclude reference to the City is tantamount to a motion to dismiss for failure to state a claim, but that attempt simply disregards the settled rule that complaints are read as a whole. *Am. Tissue, Inc. v Donaldson*, 351 F.Supp.2d 79 (SDNY 2014) at *103. The SAC pleads the claim of vicarious liability on the part of the City. *See, e.g., Triolo v Nassau Cnty.*, 2022 US App Lexis 1786 at *23:

> When an employee-officer commits an underlying
> violation * * * the municipal employer, like any other

6

     principal, remains vicariously responsible for its
     agent's conduct.

  Accordingly, under the SAC, the City is very much a viable defendant on plaintiffs' claims of vicarious liability.

*There is no good reason shown by the defendants to prevent calling defendant City of New York what it is.*

  The defendants seek as well to preclude any reference to the City as a defendant, or any reference to defense counsel as "City Attorneys" or "Corporation Counsel." This is nothing less than an attempt to "nerf" plaintiffs' claim that Agent Mitchell's conduct was exacerbated by his command that Akram repatriate himself by removing the force of government behind the things he did and the words he spoke. Unlike the case in *Soto*, plaintiffs have a compelling need to make the jury aware that Agent Mitchell acted under the aegis of the government.

*The Patrol Guide*
  Defendants' request to preclude reference to the NYPD Patrol Guide is unnecessary. Since the arrest is out of the case, plaintiffs have no reason to offer anything from the Patrol Guide or training practices of the NYPD, and will not be impacted by an order to that effect.

*FRE 404(b)(1) does not support defendants' argument to preclude inquiry into defendant Mitchell's history.*
  Defendants also make a request to preclude the plaintiffs "from inquiring to Agent Mitchell's * * * past acts." Counsel then refers to FRE 404(b)(1), which

7

is far narrower than the broad preclusion order that the defense asks for. FRE 404(b)(1) governs the introduction of crimes, wrongs or other acts as evidence of the witness' character and to show that the subject would have acted in accordance with that character. However, plaintiffs have no evidence to offer with respect to Agent Mitchell's prior acts, nor the acts of any MOS. Thus the preclusion is unnecessary but not something to which the plaintiff objects. Likewise, plaintiffs have no evidence and do not intend to argue what Agent Mitchell could or should have done. Plaintiffs' case turns not on what Agent Mitchell could or should have done. Plaintiffs' case is wholly negative: Agent Mitchell should not have struck plaintiff Farghaly in the first hand, and that he did so with the excessive and unreasonable amount of force that he employed. Plaintiffs' case attacks Agent Mitchell not for what he failed to do, but for the unreasonable affirmative acts that he committed in applying unreasonably great amounts of force to the person of Akram Farghaly.

    The defense request to preclude testimony or argument about other instances of police misconduct is hard to understand. Plaintiffs have no intention of trying to show a pattern of misconduct in this case. The conduct of NY City employees other than the events of November 2, 2015 are irrelevant and would be excludable on that ground alone. The fact that defendants' counsel feels a need for belt-and-suspenders guarantees to preclude attorney misconduct is as disturbing as it is incomprehensible, but plaintiffs see no need to burden the court with outlandish speculation about the introduction of impertinent matters.

8

*Agent Mitchell's Deposition.*

Defense counsel tries to undermine plaintiff's declaration of intent to use Agent Mitchell's deposition for impeachment by suggesting that short of clairvoyance there is no way for plaintiffs to predict how Agent Mitchell will testify. This may all be the fruit of a misconception. Plaintiff sought to give fair warning that it intended to use Agent Mitchell's deposition to impeach his anticipated testimony at trial. Defense counsel impugns this motive and suggests it is meaningless unless counsel has clairvoyance.

Plaintiff's counsel does not pretend to have psychic powers[1]. He does, however, have a lawyer's sense of prognostication that Agent Mitchell's testimony will be ripe with opportunities for cross-examination. Absent some circumstance beyond the norm, plaintiff does not see grounds for using Agent Mitchell's deposition other than for use on cross-examination, but wished to give fair notice of intent.

*Suggestion of Dollar Amount*

It seems undeniable that the suggestion by counsel of amounts to award is disfavored in the Second Circuit. The preclusion should apply to the defense as well as plaintiff, lest the door be opened to allow the plaintiff to call for specific numbers—as was the case in *Consorti v Armstrong World Indus.*, 72 F.3d 1003 (2d Cir. 1995).

For the foregoing reasons, I respectfully request an order of this court denying defendants in limine motion to the extent contested.

---

[1] Notably, the psychic power that might pertain to predicting the future is precognition, not clairvoyance.

9

Dated        New York, NY
May 2. 2022

                              Respectfully submitted,
                              s/*Rehan Nazrali*
                              Rehan Nazrali, Esq.
                              Attorney for plaintiffs
                              299 Broadway – 17th Floor
                              New York, NY 10007
                              (646) 331-9378