```
1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2
    ------------------------------x
3                                        16-CV-6660(NG)
    AKRAM FARGHALY, et al.,
4                                        United States Courthouse
            Plaintiffs,                  Brooklyn, New York
5
            -versus-                     January 27, 2023
6                                        11:00 a.m.
    THE CITY OF NEW YORK, ET
7   AL.,

8           Defendants.

9   ------------------------------x

10          TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
                 BEFORE THE HONORABLE NINA GERSHON
11              UNITED STATES SENIOR DISTRICT JUDGE

12
    APPEARANCES
13

14  For the Plaintiff:       299 Broadway
                             New York, New York 10007
15                           BY:  REHAM NAZRALI, ESQ.

16
    For the Defendant:       CORPORATION COUNSEL OF THE CITY OF
17                           NEW YORK
                             100 Church Street
18                           Room 2-172
                             New York, New York 10007-2601
19                           BY:  CAROLINE MCGUIRE, ESQ.

20
    Court Reporter:          Rivka Teich, CSR, RPR, RMR, FCRR
21                           Phone:  718-613-2268
                             Email:  RivkaTeich@gmail.com
22
    Proceedings recorded by mechanical stenography.  Transcript
23  produced by computer-aided transcription.

24

25
```

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

MOTION HEARING

1            (Video Conference.)

2            THE COURTROOM DEPUTY:  Civil cause for a hearing on

3    Farghaly versus City of New York, 16-CV-660, before Judge

4    Gershon.

5            May I have the appearance for the plaintiff.

6            MR. NAZRALI:  Rehan Nazrali for the plaintiffs.

7            THE COURT:  Can I get the spelling of your last

8    name, sir?

9            MR. NAZRALI:  N-A-Z-R-A-L-I.

10           THE COURTROOM DEPUTY:  For the defendant?

11           MS. McGUIRE:  Caroline McGuire for the defendant.

12           THE COURT:  Good morning, counsel.

13           I wanted to first speak with you about what is going

14   to be happening after today and after today's hearing, and

15   then we'll get into the motions, which are defendant's motion

16   in limine, plaintiff's motion in limine, and defendant's

17   motion to preclude the expert opinions of Dr. Koyen and Dr.

18   Uhrig.  I want you to know that I do not anticipate that I

19   will be handling the jury trial for the foreseeable future.

20   For that reason, I want to layout for you what your options

21   are.  You won't be asked by me to make any decisions today but

22   I want you to speak about it among yourselves after today's

23   conference.  And I'll give you a date by which I want to hear

24   from you.

25           Let me just talk to you about those options.  The

MOTION HEARING

1    first option would be that you consent to the magistrate

2    judge, who at this time is Magistrate Judge Ramon Reyes, who

3    is actually up for becoming a district judge in our district.

4    It looks like that may happen fairly soon, but we can't

5    predict these things.  I noted that in your pretrial order you

6    did not consent to a magistrate judge, but maybe your views

7    will change after what we discuss at today's hearing.  I

8    wanted to lay that out.  That's option number one, consent to

9    the assigned magistrate judge, Judge Reyes.

10          The second option, which you may or may not be

11   familiar with, is that you can consent to a different

12   magistrate judge to be selected at random.  In other words,

13   you cannot just say I want judge so and so, selected at

14   random.  If you look at the consent form for magistrate judge

15   you'll see that is described.  But I need you to understand

16   that if you do choose that option, once another magistrate

17   judge is selected for trial purposes, you're committed to

18   that.  You can't say, oops, I've changed my mind I want to go

19   back and go to a district judge or a different magistrate

20   judge.  I think that's clear from the notice form; I wanted to

21   make it completely clear.

22          The third option is you can use the services of

23   Judge Reyes for settlement purposes.  I'm hoping that once I

24   resolve these motions you'll have a better idea of what the

25   trial will look like for each side and it may help you reach a

MOTION HEARING

1    settlement, which I appreciate you were not able to do before.

2            The fourth option is that since the pandemic in the

3    Court we have a trial ready program that our ADR office runs

4    in which they reach out to former magistrate judges who have

5    retired from the bench but are still working for the purposes

6    of settlement, and that has been a very affective procedure.

7    You might want to think about that.

8            Then finally, if there is no prospect of settlement

9    and if there is no consent to trial before a magistrate judge,

10   the fifth option is that I will send this case out for

11   reassignment to another district judge for trial purposes.

12           Let's say within three weeks, February 17, after

13   you've had a chance to confer with each other let me know in a

14   joint letter which option you've chosen.

15           Will that work for you, three weeks to hear from

16   you?

17           MR. NAZRALI:  Yes, your Honor.

18           MS. McGUIRE:  Yes, your Honor.

19           THE COURT:  Obviously you don't need to tell me --

20   if you've decided that you want to go to a district judge, you

21   don't need to tell me you didn't consent to a magistrate

22   judge.  We don't like to know who consented and who didn't.

23   With no pressure on you, just let us know what the choice is.

24           In the meanwhile, as I said, today I'd like to hear

25   from you on your motions if you have anything that you want to

MOTION HEARING

1    add to your papers; otherwise, I'll go ahead and rule on the

2    motions.

3              Anything that either of you would like to add?

4              MR. NAZRALI:  No, your Honor.

5              MS. McGUIRE:  Nothing for defendants, your Honor.

6              THE COURT:  Okay.  I should also say that obviously

7    an assigned trial judge can make changes, but I do think it

8    would be useful to have my rulings on the record based on my

9    familiarity with the case.  Because I'll not be trying the

10   case, for the most part I'm not going to be discussing

11   proposed voir dire and requested charge with you, which you

12   also have in your papers, I'll leave that to the trial judge.

13   But there were two requests that the defendants made in their

14   motion in limine relating to the jury instructions, I will

15   address those.

16             In the defendant's motion in limine first, there

17   were some issues that came up, which were really on request by

18   the plaintiff even though it was the defendant's motion.  I

19   think I should address that first.

20             Plaintiff requested a preclusion of any references

21   to Officer Soto's probable cause for the arrest.  That request

22   is granted.  Officer Soto's probable cause for the arrest is

23   of no moment to the plaintiff's remaining claims relating to

24   excessive force.

25             The second topic are two requests that are related,

MOTION HEARING

1    I'll address them together.  Those are plaintiff's requests to

2    preclude references to the facts of the arrests and

3    defendant's request to instruct the jury that the arrest was

4    lawful.

5              Plaintiff's request to preclude references to the

6    facts of the arrest is denied.  The arrest is relevant and

7    necessary to allow the jury to understand the entire timeline

8    of events, and that timeline should not be unnaturally

9    truncated.  The arrest also provides context for exhibits,

10   which defendants have identified in their pretrial order,

11   including arrest report, mug shots, and the like.  Nothing

12   that I can see in Federal Rule of Evidence 403 justifies

13   preclusion of references to the facts of the arrest.  It says

14   nothing about whether the arrest was lawful or not, so as to

15   be unfairly prejudicial to plaintiffs, and I think truncating

16   the timeline would lead to more, not less, jury confusion and

17   speculation.  So this request is denied.

18             On the other hand, I would instruct the jury that

19   they do not need to concern themselves and should not

20   speculate about whether the arrest was lawful or not; because

21   whether it was lawful or not isn't relevant to plaintiff's

22   claims.  This instruction would address, in my mind,

23   defendant's concern that the jury may otherwise seek to

24   compensate the plaintiffs for the entire incident, including

25   the arrest, while also avoiding prejudice to the plaintiffs

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

MOTION HEARING

1   that could result from going as far as the defendant's suggest

2   and instructing the jury that the arrest was lawful.  We want

3   to make sure that the jury is not conflating the lawfulness of

4   the arrest with the lawfulness of the use of force.  We want

5   to separate that.  In short, I would permit references to the

6   facts of the arrest, but instruct the jury that they are not

7   to consider or speculate as to whether the arrest was lawful

8   or not.

9        The next topic is two requests, which are also

10  related.  Defendant's request that plaintiffs be precluded

11  from referring to the defendants and their counsel as the

12  city, city attorneys or corporation counsel.  And defendants'

13  request that the jury only be instructed on the federal

14  excessive force claim rather than on both the federal claim

15  and the state law assault and battery claim.

16       So I'm now addressing Ms. McGuire.  What I have

17  typically done in the past, which has been affective, and you

18  may be familiar with this practice, I would be prepared to

19  direct that plaintiffs not be permitted to refer to defendants

20  as city counsel and just be referred to as the individual

21  defendant and individual defendant's counsel.  As wells to

22  combine the federal and state jury charges, so long as the

23  city commits on the record that if the jury finds that the

24  individual defendant used excessive force that the city is

25  indeed vicariously liable understate law respondeat superior

MOTION HEARING

1  doctrine for the verdict against the individual defendant.

2         MS. McGUIRE:  Understood, your Honor.  I believe we

3  concede that Officer Mitchell was acting within the scope of

4  his employment, which would obviate the respondeat issue.

5         THE COURT:  When you say obviate it, you mean the

6  city is bound by it.

7         MS. McGUIRE:  We would be bound by it.  But what I

8  would just note, is based on state law we don't make

9  indemnifications until a final judgment is rendered.

10        THE COURT:  Indemnification is a completely

11 different issue.  Whether the city indemnifies the defendant

12 or not, is the city itself is liable under respondeat

13 superior, it pays.  Period.  Right?

14        MS. McGUIRE:  Correct.

15        THE COURT:  Okay, so that's what I'm talking about.

16 I'm not talking about -- we don't have to go into the whole

17 indemnification issue.

18        The question is, do you accept that if I combine and

19 just talk about excessive force, I don't tell the jury it's

20 federal law, it's state law, whatever, that just describe what

21 the charge is, just describe in the charge what the elements

22 of an excessive force claim is, that you understand that if

23 they find excessive force it means that state law as well as

24 federal law has been violated and the city has to pay due

25 respondeat superior.

MOTION HEARING

1          MS. McGUIRE:  Yes, your Honor.  We understand that.

2          THE COURT:  Okay.  Do you agree to that?  If you

3    agree to that, then I think my solution is a good one.  I'll

4    hear from plaintiff's counsel as well, but I want to know

5    first what your position is.

6          MS. McGUIRE:  Your Honor, I believe defendants would

7    be inclined to agree with that.  But I would like to just run

8    it up to my supervisor before putting it on the record that we

9    do agree.  Perhaps in the joint letter due on February 17 we

10   can indicate whether or not we would agree to that.

11         THE COURT:  Okay.  Just understand that if you

12   don't, I would deny both of your requests.

13         MS. McGUIRE:  Understood, your Honor.

14         THE COURT:  Okay Mr. Nazrali.

15         MR. NAZRALI:  Yes.  I mean, I think the argument for

16   vicarious liabilities has been made, it's clear as evidence.

17   I think counsel has the authority and the legal name to

18   countenance the request of the Court.  But I believe that the

19   Court's wisdom is prudent here I think.  I concur with the

20   Court's position.

21         THE COURT:  Okay.  We'll note that we'll hear from

22   defendants.

23         I want to put on the record, just so everything is

24   clear going forward, certain requests that were unopposed and

25   they are going to be granted as unopposed.  There are quite a

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

MOTION HEARING

1    few of these.

2              Defendants request that plaintiffs be precluded from

3    referencing any claims that were dismissed or voluntarily

4    withdrawn by plaintiffs or introducing evidence such as

5    damages concerning those claims.  That's one.

6              Second one is defendants request that plaintiffs be

7    precluded from suggesting or presenting evidence regarding

8    indemnification of traffic agent Mitchell.

9              The third is defendants' request that plaintiffs be

10   precluded from offering any evidence or eliciting any

11   testimony about the NYPD patrol guide, provision, training or

12   policy.

13             The fourth is defendants' request that plaintiffs be

14   precluded from inquiring into Mitchell's or other officers

15   past acts, including Officer Soto.

16             The fifth is defendants' request that plaintiffs be

17   precluded from offering any testimony or arguing about what

18   they believe traffic agent Mitchell could or should have done.

19             The sixth is defendants' request that plaintiffs be

20   precluded from referring to other instances of police

21   misconduct.

22             And finally both parties agree that neither side

23   should suggest a specific dollar amount to the jury on

24   summation or at any time during the trial.

25             Have I got those correct?

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

MOTION HEARING

1          MR. NAZRALI:  Yes.

2          THE COURT:  There were also a couple of requests

3   that were withdrawn, I'm going to treat them as withdrawn by

4   the defendants and make no ruling on them.

5          The first related to plaintiffs' introduction of

6   traffic agent Mitchell's deposition transcript for substantive

7   purposes.

8          The second was the defendants' request that the city

9   be removed from the caption.  That was based on an earlier

10  argument which the city has withdrawn.

11         The plaintiffs had only one request in their motion

12  in limine and that the bystander video recording be excluded.

13  While recognizing the relevance of the video, plaintiffs argue

14  it should be excluded under Rule 403.  I'm going to deny that

15  request.

16         Going through the various grounds that are possible

17  under 403, the video is not cumulative.  It provides a

18  perspective of the altercation that will not come from a party

19  witness.  Relatedly, it depicts body language and contains

20  audio that will not be captured by the parties' testimony.  It

21  will also assist the jury in determining what to took place

22  before the video begins.  The jury can consider whether the

23  events, body language, and the audio in the video make

24  plaintiffs' or defendants' version of events taking place

25  before the video more or less likely.  I'm not persuaded by

MOTION HEARING

1   the two reasons that the plaintiffs offer as to why the video

2   will unfairly prejudice them.  And any risk of unfair

3   prejudice certainly does not substantially outweigh the

4   video's probative value as required by Rule 403.

5          Prejudice contemplated by Rule 403 must go beyond

6   merely favoring one side.  It must be unfairly prejudicial.

7          First, plaintiffs' argument that jurors will give me

8   weight to the video because it is a video while the plaintiffs

9   will only be offering oral testimony about what happened, is

10  simply an argument that the video favors the defendants, which

11  have already stated is not a reason to exclude it under 403.

12  Courts in this circuit permit video evidence even when it

13  favors one party.

14         I also reject the plaintiffs second argument for

15  excluding the video, which is that it doesn't depict the

16  entire altercation.  I think the jury can understand that the

17  video doesn't do that, and will be able to consider

18  Mr. Farghaly's testimony to what happened prior to the video.

19  The request to preclude the bystander video is denied.

20         Any comment on that?

21         MR. NAZRALI:  No, your Honor.  That's fine.

22         THE COURT:  Okay.  Let me go on to the defendants'

23  Daubert motion, which is governed by Federal Rule of Evidence.

24  702.

25         In the Daubert case, 509 U.S. 579, the Supreme Court

MOTION HEARING

1  explained that Rule 702 contemplates -- (audio

2  interruption) -- for the trial judge, but it also makes clear

3  that the ruling bodies of liberal standard of admissibility

4  for expert opinions, I would cite Second Circuit case 1995,

5  *McCullock versus H.B. Fuller Company*, 61 F.3d 1038 at 1042 to

6  44, as just an example of that principle.  The trial court's

7  gatekeeper role is not intended to serve as a replacement for

8  the adversary system.  As Daubert explained, quote, "vigorous

9  cross-examination, presentation of contrary evidence, and

10  careful instruction on the burden of proof are the traditional

11  and appropriate means of attacking shakey but admissible

12  evidence," close quote.

13       With these principles in mind, I for the most part,

14  deny defendants' motion to exclude the testimony of Dr. Koyen

15  and Dr. Uhrig.  Although I grant the motion to the extent it

16  seeks to exclude the doctors from just regurgitating the

17  factual narrative of the altercation as told to them by

18  Mr. Farghaly in their testimony.  And I'd like to explain my

19  reasons for that now.

20       Beginning with Dr. Koyen.  Defendants seek to

21  exclude the testimony of this doctor because they argue

22  plaintiffs have not established that he's qualified to render

23  the opinions he offers and his testimony is not based on

24  reliable methods.  Now, whether an expert is qualified is a

25  question that is important.  But when it comes to medical

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

MOTION HEARING

1  doctors, courts don't demand that the medical doctor be a

2  specialist in the exact area of medicine implicated by the

3  plaintiff's injury, if the doctor has the educational and

4  experiential qualifications in a field closely related to the

5  subject matter in question.  Here, Dr. Koyen's CV establishes

6  that he has been in private practice as a physiatrist for 15

7  years.  The American Academy of Physical Medicine and

8  Rehabilitation, with which he's affiliated, explains that a

9  physiatrist treats a wide variety of medical conditions

10  affecting the brain, spinal cord, nerves, bones, joints,

11  ligaments, muscles and tendons.  Dr. Koyen's own practice,

12  according to his CV, includes rehabilitation after stroke,

13  rehabilitation after surgery, electro diagnostic studies,

14  trauma care, senior care, neurodiagnosis and care, and

15  employment-related injury care.  According to his CV, his

16  education and training includes a residency in physiatry at

17  the Kingsbrook Jewish Medical Center from 1987 to 1990.  A

18  residency in general medicine at Salem Hospital from 1986 to

19  1987.  Attendance at Boston University School of Medicine.

20         This experience, training, and education clearly

21  qualifies him to diagnose Mr. Farghaly's lumbar spine injury

22  and offer an opinion on causation based on his review of two

23  MRIs in Mr. Farghaly's lumbar spine and his own physical

24  examination.

25         The defendants challenge the reliability of

MOTION HEARING

1   Dr. Koyen's diagnosis and causation in them.  Courts

2   considering the reliability of such testimony consider a

3   variety of factors, including the doctor's training and

4   experience, and whether the doctor reviewed the patient's

5   medical records, performed diagnostic tests, and examined the

6   patients.  Dr. Koyen, as the report makes clear, he reviewed

7   Mr. Farghaly's medical records, including two MRIs of the

8   lumbar spine, that he physically examined Mr. Farghaly, and

9   that he performed diagnostic tests.  So this is sufficiently

10   reliable for a medical doctor to diagnose the injury and also

11   to render an opinion as to the cause of the injury.

12        Now in this case the defendants have argued

13   principally that his opinion isn't reliable because he didn't

14   explain how he reached his causation opinion and did not

15   explicitly rule out other causes.  The defendants speculate

16   that Mr. Farghaly's lumbar spine injury could have been caused

17   by some other cause, such as his job.  Well, while it's true

18   that Dr. Koyen does not explicitly spell out how he reached

19   his conclusions regarding causation, as one judge had

20   explained in rejecting a Daubert challenge, I believe it

21   actually was -- I'm trying to think of the name of the

22   judge -- a very fine judge who was also corporation counsel at

23   one point coincidentally.  The case was Reyes versus Delta

24   Dallas Alpha Corp. 2000 Westlaw 526851 at page two, or star

25   two I should say, Southern District of New York May 2, 2000,

MOTION HEARING

1    said, "this is not a case involving complex questions of

2    medical causation where it would be necessary to use

3    sophisticated scientific theory or methods to determine the

4    cause of injury."

5         I'm satisfied that Dr. Koyen's review of the medical

6    records and his physical examination, including performing

7    diagnostic tests, are sufficiently reliable methods of

8    rendering an opinion as to the cause of the lumbar spine

9    injury.

10        Defendants challenges go to the weight not the

11   admissibility of Dr. Koyen's testimony, and can be explored by

12   the defendants on cross-examination.

13        Turning now to Dr. Uhrig.  His testimony is

14   challenged on the ground that plaintiffs have not established

15   that his testimony will assist the trier of fact and is

16   reliable.  I reject both of these grounds.

17        Obviously, for expert testimony to assist the trier

18   of fact as required by 702 it has to be relevant, and it

19   shouldn't be directed solely to lay matters which a jury is

20   capable of understanding and deciding without the expert's

21   help.  Here, the defendants argue that a jury can understand

22   plaintiff's purported injuries without Dr. Uhrig's unnecessary

23   assistance, and an expert is not needed to explain how one

24   might feel after a sudden event.  I disagree.

25        According to his CV, Dr. Uhrig is a New York state

MOTION HEARING

1  licensed psychologist, also a Ph.D in counseling phycology,

2  has been employed in the field since at least 2009, and since

3  2012 has maintained his own psychology practice.  Dr. Uhrig's

4  diagnostic impressions of Mr. Farghaly were major depression

5  and anxiety disorder.  His diagnostic impressions of

6  Mr. Farghaly's wife, Ms. Mohammed, were major depression,

7  anxiety disorder, and posttraumatic stress disorder/chronic.

8  He opined that these conditions were caused by the altercation

9  with traffic agent Mitchell.  Such opinions with these type of

10 diagnostic impressions require a medical professional; clearly

11 they couldn't be made by a jury without a doctor's assistance.

12      It is more than, as defendants characterize the

13 testimony, that plaintiffs felt upset after a sudden event.

14 So I'm not going to exclude Dr. Uhrig's diagnostic impressions

15 on the ground -- and causation of opinion -- on the ground

16 they wouldn't assist the trier of fact.

17      Now, the defendants also argue that Dr. Uhrig's

18 diagnostic impressions and causation opinion are not based on

19 reliable methodology.  But his testimony is based on his

20 meeting with and, quote, "mental status examination," close

21 quote, of the two plaintiffs.  It's apparent that Dr. Uhrig,

22 relying on his years of experience as a psychologist, training

23 and education, rendering his diagnostic impressions and

24 causation opinion.  I'm satisfied that a meeting and

25 discussion is a reliable method for qualified psychologist to

MOTION HEARING

1    diagnose psychological injuries and render an opinion as to

2    their cause.

3            And defendants offer no basis for thinking that

4    those aren't the reliable methods for use by a psychologist.

5            To the extent that defendants take issue with

6    Dr. Uhrig's opinion as being, quote, "diagnostic impressions,"

7    close quote, or for not sufficiently explaining his reasons

8    for reaching his diagnosis or causation opinion, such

9    challenges go to the weight and not the admissibility of the

10   testimony.

11           Finally, I do want to go back to what I said in the

12   beginning.  That I do agree with the defendants that neither

13   doctor should be permitted to just regurgitate the narrative

14   facts about the altercation between the traffic agent and

15   Mr. Farghaly, which would be simply repeating what

16   Mr. Farghaly told them.  Such testimony is cumulative of other

17   evidence and it's not the appropriate subject of expert

18   testimony.  This ruling, of course, is subject to being

19   revisited if, for example, the defense were to open the door

20   in cross-examination.

21           In sum, I deny the Daubert motions, except to the

22   extent that the doctors are not permitted to testify as to the

23   narrative of the altercation as told to them by Mr. Farghaly.

24           That, counsel, will conclude my rulings.  I'm

25   wondering if there was anything else that I could help you

MOTION HEARING

1  resolve today that would help move this case forward?

2         MR. NAZRALI:  Yes, your Honor.  The question about

3  the ruling with respect to the Daubert motion and exclusion of

4  the apparent regurgitation of --

5         THE COURT:  Yes.

6         MR. NAZRALI:  That doesn't exclude the plaintiff

7  from asking the doctors why the plaintiff first sought

8  treatment with them, right?  They would have to refer to

9  the --

10         THE COURT:  I think obviously they would have to

11  refer to it in a very general way, why he came, that he came,

12  he reported that he came after an incident that occurred with

13  a traffic agent.  He may say he was arrested or not.  But he

14  has to say something, of course.  I agree with you.

15         What I'm saying is that Mr. Farghaly, from what I

16  know from motion for summary judgment, has a long and detailed

17  explanation of what happened.  And what I'm trying to avoid is

18  the situation where his version of events becomes treated as a

19  version that is accepted by the jury because it's recited by

20  an apparent expert.

21         MR. NAZRALI:  I would want to connect that the

22  relationship between the doctors and the plaintiff is in fact

23  this event.  It would be sort of -- it would be testifying

24  sort of in a vacuum if I don't have anything to contextualize

25  the relationship.  I'm thinking somehow, even a limited --

MOTION HEARING

1   obviously reference would be essential, because that would set

2   the sort of space from which the jury will assess how they

3   arrived at their opinions.

4            THE COURT:  I understand what you're saying.  I

5   think you're making a very good point.  I think, as I said, if

6   the defendants on cross-examination open the door to a

7   detailed recitation of what Mr. Farghaly said, that could

8   happen because the defendants may want to say, well, you're

9   relying just on what Mr. Farghaly told you, aren't you.  I

10  would obviously -- that's what they have to, what the expert

11  has to rely on it.  If they challenge that and go into the

12  details of what Mr. Farghaly said, well, obviously you have to

13  be able to address that as well.

14           Maybe this is something that counsel can talk about

15  before the trial and have a sense of -- for example, maybe a

16  good idea, Mr.Nazrali, would be for you to identify how you

17  intend to approach that with the doctor in your direct

18  examination.  See if the defense has any objection to it.

19           MR. NAZRALI:  A limited exploration of why they are

20  there and connecting it to each other.

21           THE COURT:  Right.  And the doctor may have to say,

22  well, if he got punched in the chest by a traffic agent, this

23  could make him feel X, Y, Z.  I don't know exactly what his

24  testimony will be.  So there would have to be some reference

25  to why Mr. Farghaly is seeing a psychologist.  I just don't

MOTION HEARING

1    want a situation where you would ask the doctor, well, and

2    Mr. Farghaly told you X and Y an Z, you make a long marshaling

3    of Mr. Farghaly's evidence through the expert; and then it

4    becomes as if the expert is setting forth the same evidence

5    that Mr. Farghaly did.

6            MR. NAZRALI:  Your Honor, if I may.  The

7    psychologist, he's particularly bound by a narrative.  He's

8    bound by that.  He makes his judgments by assessing this

9    narrative essentially, and determining the inflexion points in

10   that narrative.  Those are critical.  For example, the

11   contact.  The contact is the trauma.  For me, if I can't

12   reference it, what is the basis of your finding for trauma,

13   well, he would have to describe that he underwent a traumatic

14   incident and what the details of that are, are part of the

15   basis of his diagnosis.

16           THE COURT:  I think they said, to the extent that

17   that's correct, then I think he does have to discuss it.  But

18   it can be done in a way where he is reciting where it's known

19   that it's based on what Mr. Farghaly told him, and that he

20   doesn't have any -- obviously he wasn't there -- he doesn't

21   have any personal knowledge of it.

22           MR. NAZRALI:  So a caveat:  This is based on what

23   Mr. Farghaly said to you, right, Doctor?

24           Something like that?  Some kind of --

25           THE COURT:  That may be sufficient.  As I say, it

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

MOTION HEARING

1   makes sense for you to prepare your direct on this and share

2   it with defense counsel so that if there are any disputes

3   about the way it's stated they can be handled in advance of

4   the trial.

5         MR. NAZRALI:  So we will revisit this question a

6   little bit further at the time of the trial.

7         THE COURT:  Yes.

8         Ms. McGuire, are you okay with this?

9         MS. McGUIRE:  Yes, your Honor.  Defendants agree

10   with your Honor's ruling that the doctor shouldn't be giving

11   the narrative events to the jury.  I think that was the heart

12   of your Honor's ruling.

13         THE COURT:  Yes.  But it may come up in the course

14   of a question as to what the basis for his concluding that

15   there was mental trauma.

16         MS. McGUIRE:  Yes.

17         THE COURT:  Okay.  Anything else that we can take

18   care of today?

19         MR. NAZRALI:  I'm always amenable to discussion for

20   settlement.  That's something for counsel for the city has to

21   be prepared for.

22         MS. McGUIRE:  I was going to say nothing further for

23   defendants, your Honor.

24         THE COURT:  Okay.  I think we'll look forward to

25   hearing from you February 17, I believe is the date, on one

MOTION HEARING

1    thing relating to the motions, the other thing about how you

2    want to go forward.  If you do want settlement discussions, my

3    various options suggested things that could be done.

4              Thank you very much.

5              MR. NAZRALI:  Thank you.

6              MS. McGUIRE:  Thank you.

7              (Whereupon, the matter was concluded.)

8                        *    *    *    *    *

9    I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

10

11   */s/ Rivka Teich*
     Rivka Teich, CSR RPR RMR FCRR
12   Official Court Reporter
     Eastern District of New York

13

14

15

16

17

18

19

20

21

22

23

24

25